IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ROBERT MOSS, <br><br> Defendant. | CASE NO.: 4:23-cr-91-2 |

## REPORT AND RECOMMENDATION

Defendant Moss filed a Motion to Suppress DNA Warrant.  Doc. 53.  The Government filed a Response in Opposition.  Doc. 62.  The Court held a hearing on this and other motions on April 10, 2024.  Doc. 73.  For the following reasons, I **RECOMMEND** the Court **DENY** Defendant Moss's request for a Franks hearing and **DENY** Defendant Moss's Motion to Suppress DNA Warrant.

### BACKGROUND

Defendant Moss moves to suppress the fruits of a search warrant issued on June 14, 2023.  The Government's position is based on the following factual allegations contained in its Response brief, doc. 62, which are supported by two interview summaries and the underlying search warrant application, docs. 62-1 through -3.

The Government asserts three men robbed and shot victim Mark Martin during an intended drug deal on October 8, 2021.  Doc. 62 at 2.  Martin told investigators he entered the back seat of a white, four-door Ford F-150 pickup truck on the driver's side.  Doc. 62-1 at 1–2.  A man in the back seat immediately held Martin at gunpoint using an AR-style pistol.  Id. at 2.  The Government asserts Defendant Robert Moss was the man in the back seat.

Martin told investigators Moss took his cash, phone, and a gun.  Id.  Moss then passed the two guns—Martin's gun and the AR-style pistol—to Defendant Graylyn Simmons in the front passenger seat.  Id. at 4.  The driver of the truck, Defendant Brandon McCall Williams, jumped out of the car with Martin's keys to steal Martin's car, which was parked nearby.  Id. at 2.  Simmons then moved to the driver's seat.  Id.

Martin stated Simmons and Moss saw Martin's cousin in the parking lot looking for Martin.  Id.  Moss encouraged Simmons to get out and shoot Martin's cousin.  Id. at 4.  Simmons exited the vehicle with the AR-style pistol and started shooting.  Id. at 2, 4.  Moss reached up to the front seat to grab the gun he had taken from Martin.  Id. at 4.  Martin pushed Moss down to the floorboard and escaped the truck.  Simmons saw Martin escaping and shot Martin in the buttocks.  Id. at 2.  The three robbers fled in Martin's car, leaving the truck behind in the parking lot.  Id. at 4.

Martin told agents he knew the two men in the front seat—Defendants Simmons and Williams—but did not know the man in the back seat.  Id. at 2.  The Government maintains the man in the back seat was Defendant Moss.  The instant Motion concerns law enforcement efforts to affirmatively identify the man in the back seat as Defendant Moss.

During an interview with Special Agent Rebekah Parker and Task Force Officer Daniel Newman on October 21, 2021 (approximately two weeks after the robbery), Martin described the man in the back seat as "a large male with a spandex-type skully cap . . . the size of a linebacker and had a smaller head."  Id. at 4.  On November 5, 2021, the two agents interviewed Martin again and showed him a photo line-up.[1]  Martin did not recognize any of the individuals in the

---

[1]     The parties represent this interview took place on November 5, 2021.  Doc. 53-1 at 3 (Defendant Moss's brief); Doc. 62 at 2–3 (Government's Response).  However, the Government submitted an investigation report of the interview with conflicting dates.  Doc. 62-2.  The "Summary of Event" section

line-up.  Doc. 62-2 at 1.  However, "[Martin] advised [he] looked at three [music] videos and was able to locate a video a small flash of which showed a male [Martin] advised might be the unidentified male who sat in the backseat during the robbery but could not be certain."  Id.  The agents stated their belief in the interview summary that the man in the video was Deandre Johnson.  Id. at 2.

On June 14, 2023, Special Agent Parker sought a warrant to collect a DNA sample from Defendant Moss.  Doc. 62-3.  In her affidavit in support of the warrant application, Parker stated she intended to compare Moss's DNA with DNA found on an AR-style pistol found in the bushes near the scene of the robbery.  Id. at 5.  Parker stated that, on October 12, 2021, a detective searched the white Ford F-150 used in the October 8, 2021 robbery.  Id. at 6.  The truck was registered to Enterprise Rental Car.  Id.  The detective found a phone located in the back pocket of the front passenger seat.  Id.  A search of the phone revealed it belonged to Defendant Moss.  Id.  Parker also provided Martin's description of the man in the back seat as "a very large black male similar in size to an NFL football linebacker with a small head."  Id. at 9.  Agent Parker swore Defendant Moss is "a black male, approximately 5'11" tall approximately 310 pounds, with black hair and brown eyes," id. at 3, and Defendant Moss's driver's license "shows he is 6 feet tall, weighing 356 pounds," id. at 9.  The affidavit, however, contained no mention of Martin's statements during the November 5, 2021 interview or officers' belief that Martin had

---

of the report states the interview took place on November 5, 2021.  Id. at 1. The "Narrative" section shows the interview took place on October 28, 2021.  Id.

The date disparity is immaterial.  There is no challenge or dispute about the date of the interview or what occurred during the interview.  As explained below, the interview was not mentioned in Agent Parker's June 14, 2023 affidavit made in support of her application for a search warrant.  The parties do not dispute this fact, so the date of the second interview is immaterial.

identified Deandre Johnson as—potentially—the person in the back seat on the night of the robbery.

The undersigned found probable cause and issued the warrant. Id. at 1. Defendant Moss now moves to suppress the fruits of the June 14, 2023 search warrant, arguing Agent Parker's affidavit was deficient for failing to include Martin's identification of the man in the music video or agents' belief the man in the video was Deandre Johnson. Doc. 53.

## LEGAL STANDARD

Affidavits supporting arrest warrants are presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). To challenge the veracity of an affidavit in support of a search warrant, a defendant must make "'a substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." United States v. Arbolaez, 450 F.3d 1283 (11th Cir. 2006) (quoting Franks v. Delaware, 438 U.S. 154, 155–56 (1978)). If the defendant meets both requirements, he is entitled to an evidentiary hearing on the issue. The requirements for making a substantial preliminary showing are "not lightly met." Arbolaez, 450 F.3d at 1294. Negligent or insignificant false statements or omissions will not invalidate a warrant. United States v. Reid, 69 F.3d 1109, 1114 (11th Cir. 1995). Even so, intentional and reckless omissions will only invalidate a warrant "if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997). The defendant's burden is to show "absent those misrepresentations or omissions, probable cause would have been lacking." United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) (quoting United States v. Novaton, 271 F.3d

4

968, 987 (11th Cir. 2001)).  If the remaining content cannot support probable cause, the defendant is entitled to a hearing.  Franks, 428 U.S. at 172.

## DISCUSSION

Defendant Moss argues Agent Parker omitted the fact Martin identified another person as the man in the back seat during an interview, a man law enforcement believed to be Deandre Johnson.  Doc. 53.  At the hearing, Defendant Moss argued the omission of these facts twice—in Parker's affidavit and Parker's grand jury testimony—shows the omission was intentional.[2]  Defendant Moss moves to suppress the evidence seized under the June 14, 2023 search warrant.  Doc. 53.  Defendant Moss also requests an evidentiary hearing under Franks in support of his Motion.  Doc. 53-1 at 5.

The Government opposes Defendant Moss's Motion.  Doc. 62.  The Government argues Defendant Moss has failed to make the preliminary showing necessary for an evidentiary hearing under Franks.  Id. at 3–9.  The Government argues the addition of the facts omitted from the affidavit would not invalidate probable cause.  Id. at 9–10.  The Government also argues the evidence should not be suppressed because officers relied on the warrant in good faith under United States v. Leon, 468 U.S. 897 (1984).  At the hearing, the Government did not offer an explanation for Agent Parker's failure to include facts about the November 5, 2021 interview in her affidavit.

The Court first considers whether Agent Parker "deliberately or recklessly . . . failed to include material information, in the affidavit."  I conclude Defendant Moss has shown that Agent

---

[2]   Defendant Moss filed a motion to dismiss the indictment based on Agent Parker's omissions from her grand jury testimony.  Doc. 51.  I will address the motion to dismiss in a separate Report and Recommendation.

5

Parker failed to include material information in her affidavit but has not shown that omission was deliberate or reckless.

The omitted information was material. Agent Parker stated she was seeking the DNA warrant to collect Defendant Moss's DNA in part because "it is believed [Defendant Moss] was the backseat passenger" with the AR-style pistol during the robbery. Doc. 62-3 at 13. In other words, the purpose of the warrant was to gather information to identify the man in the backseat. The request for the warrant was largely based on the cellphone associated with Moss that was found in the vehicle used in the robbery and the fact that Moss matched the visual description of the assailant provided by Martin. However, Agent Parker also knew Martin had failed to identify anyone in a line-up and pointed law enforcement to videos depicting a man Martin believed "might be" the man in the backseat, a man law enforcement believed to be Johnson. These facts were plainly germane to Agent Parker's request for a warrant to obtain Moss's DNA, given that they undermined the evidence pointing to Moss as the man in the backseat.

Even though the omitted facts were material, Defendant Moss has not shown the omission was deliberate or reckless. At the hearing on this Motion, counsel for Defendant Moss argued Agent Parker acted deliberately or recklessly and pointed to the fact she also omitted information about Martin's November 5, 2021 interview from her grand jury testimony on November 1, 2023. Defendant Moss did not point to any other evidence suggesting Agent Parker acted deliberately or recklessly. The mere fact that Agent Parker did not mention the November 5, 2021 interview during her grand jury testimony is not enough to satisfy the preliminary showing that Agent Parker acted deliberately or recklessly. Review of the grand jury transcript shows Agent Parker was not asked about the November 5, 2021 interview during her grand jury testimony. Indeed, Agent Parker was not asked any question that would have

required her—or even prompted her—to discuss the November 5, 2021 interview. Defendant Moss's counsel conceded at the hearing that Agent Parker was not obligated to offer up additional information to the grand jury about the November 5, 2021 interview. Because Defendant Moss has not made a preliminary showing that Agent Parker acted deliberately or recklessly in omitting material information, he fails to satisfy the first requirement under Franks.

Defendant Moss also fails to satisfy the second Franks requirement, which requires a substantial preliminary showing that the omitted facts were essential to the probable cause determination. The omitted facts are that Martin could not identify anyone in a line-up and Martin provided an uncertain identification of a man in a music video. Martin explained he did not know the man in the backseat on the night of the robbery and he did not know the man he identified in the music video. Martin merely stated the man in the music video "might be" the man in the back seat "but could not be certain." Doc. 62-2 at 2. Law enforcement agents—not Martin—believed the man in the music video was Deandre Johnson. Martin's statements are, at most, an equivocal identification of an individual with whom Martin was not familiar. On the other hand, Agent Parker provided compelling evidence in her affidavit pointing to Defendant Moss as the man in the back seat. Defendant Moss's cellphone was found near the back seat during a search of the truck after robbery. This single fact is extraordinarily significant. Moreover, Agent Parker showed that Defendant Moss's appearance is consistent with Martin's description of the man in the back seat.

Even if the omitted facts had been included in the affidavit, the affidavit would still support probable cause for the issuance of a search warrant to obtain Defendant Moss's DNA. If the facts had been included, the affidavit would have included Martin's inability to identify anyone in a line-up, and then Martin's equivocal statement that the man in the music video

"might be" the assailant, but that Martin could not be sure.  Then the affidavit would explain that despite Martin's uncertainty, Defendant Moss's cellphone was found near the backseat of the vehicle used in the robbery, and Defendant Moss matched the somewhat distinctive physical description of the assailant.  These facts, taken together, would support probable cause for a warrant to obtain Defendant Moss's DNA.  Thus, Defendant Moss is unable to make a substantial preliminary showing regarding the second Franks requirement.

In sum, Defendant Moss has not shown Agent Parker acted deliberately or recklessly, and he has not shown that inclusion of omitted facts would invalidate probable cause.  Because Defendant Moss failed to make the required substantial preliminary showings, he is not entitled to a Franks hearing, and his Motion to Suppress DNA Warrant is due to be denied.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Defendant Moss's request for a Franks hearing and **DENY** Defendant Moss's Motion to Suppress DNA Warrant.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 29th day of May, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA