lkIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>ROBERT MOSS,<br><br>    Defendant. | CASE NO. 4:23-cr-91-2 |

### REPORT AND RECOMMENDATION

Defendant Moss filed a Motion to Dismiss Indictment.  Doc. 51.  The Government filed a Response in Opposition.  Doc. 64.  The Court held a hearing on this and other motions on April 10, 2024.  Doc. 73.  For the following reasons, I **RECOMMEND** the Court **DENY** Defendant Moss's Motion to Dismiss.

### BACKGROUND

The grand jury indicted Defendant Moss on charges arising from a robbery, including interference with commerce by robbery, carjacking resulting in serious bodily injury, prohibited use of a firearm, possession of a firearm by a prohibited person, and conspiracy.  Doc. 3.  Defendant Moss moves to dismiss the Indictment.  Doc. 51.  The Government's position is based on the following factual allegations contained in its Response brief, doc. 64, which are supported by two interview summaries, a search warrant application, and a warrant inventory return form, docs. 64-1 through -4.

The Government asserts three men robbed and shot victim Mark Martin during an intended drug deal on October 8, 2021.  Doc. 64 at 2.  Martin told investigators he entered the back seat of a white, four-door Ford F-150 pickup truck on the driver's side.  Doc. 64-1 at 1–2.

A man in the back seat immediately held Martin at gunpoint using an AR-style pistol. Id. at 2. The Government asserts Defendant Robert Moss was the man in the back seat.

Martin told investigators the man in the back seat took his cash, phone, and a gun. Id. The man in the back seat then passed the two guns—Martin's gun and the AR-style pistol—to Defendant Graylyn Simmons in the front passenger seat. Id. at 4. The driver of the truck, Defendant Brandon McCall Williams, jumped out of the car with Martin's keys to steal Martin's car, which was parked nearby. Id. at 2. Simmons then moved to the driver's seat. Id.

Martin stated Simmons and the man in the back seat saw Martin's cousin in the parking lot looking for Martin. Id. Moss encouraged Simmons to get out and shoot Martin's cousin. Id. at 4. Simmons exited the vehicle with the AR-style pistol and started shooting. Id. at 2, 4. The man in the back seat reached up to the front seat to grab the gun he had taken from Martin. Id. at 4. Martin pushed the man in the back seat down to the floorboard and escaped the truck. Simmons saw Martin escaping and shot Martin in the buttocks. Id. at 2. The three robbers fled in Martin's car, leaving the truck behind in the parking lot. Id. at 4.

Martin told agents he knew the two men in the front seat—Defendants Simmons and Williams—but did not know the man in the back seat. Id. at 2. The instant Motion concerns the Government's presentation to the Grand Jury showing Defendant Moss was the man in the back seat.

During an interview with Special Agent Rebekah Parker and Task Force Officer Daniel Newman on October 21, 2021 (approximately two weeks after the robbery), Martin described the man in the back seat as "a large male with a spandex-type skully cap . . . the size of a linebacker and had a smaller head." Id. at 4. On November 5, 2021, the two agents interviewed Martin

2

again and showed him a photo line-up.[1]  Martin did not recognize any of the individuals in the line-up.  Doc. 64-2 at 1.  However, "[Martin] advised [he] looked at three [music] videos and was able to locate a video a small flash of which showed a male [Martin] advised might be the unidentified male who sat in the backseat during the robbery but could not be certain."  Id.  The agents stated their belief in the interview summary that the man in the video was Deandre Johnson.  Id. at 2.

On June 14, 2023, Special Agent Parker sought a warrant to collect a DNA sample from Defendant Moss.  Doc. 64-3.  In her affidavit in support of the warrant application, Parker stated she intended to compare Moss's DNA with DNA found on an AR-style pistol found in the bushes near the scene of the robbery.  Id. at 5.  Parker stated that, on October 12, 2021, a detective searched the white Ford F-150 used in the October 8, 2021 robbery.  Id. at 6.  The truck was registered to Enterprise Rental Car.  Id.  The detective found a cell phone located in the pocket on the backside of the front passenger seat.  Id.  A search of the cell phone revealed it belonged to Defendant Moss.  Id.  Parker also provided Martin's description of the man in the back seat as "a very large black male similar in size to an NFL football linebacker with a small head."  Id. at 9.  Agent Parker swore Defendant Moss is "a black male, approximately 5'11" tall approximately 310 pounds, with black hair and brown eyes," id. at 3, and Defendant Moss's driver's license "shows he is 6 feet tall, weighing 356 pounds," id. at 9.  The undersigned found

---

[1]  The parties represent this interview took place on November 5, 2021.  Doc. 51-1 at 2 (Defendant Moss's brief);  Doc. 64 at 2  (Government's Response).  However, the Government submitted an investigation report of the interview with conflicting dates.  Doc. 64-2.  The "Summary of Event" section of the report states the interview took place on November 5, 2021.  Id. at 1.  The "Narrative" section shows the interview took place on October 28, 2021.  Id.

The date disparity is immaterial.  There is no challenge or dispute about the date of the interview or what occurred during the interview.  As explained below, the interview was not mentioned in Agent Parker's November 1, 2023 grand jury testimony.  The parties do not dispute this fact, so the date of the second interview is immaterial.

probable cause and issued the warrant.  Id. at 1.  The Government obtained two buccal swabs from Defendant Moss on June 15, 2023.  Doc. 64-4.

The Government presented the case against Defendant Moss to the grand jury on November 1, 2023.  Doc. 64-6 (grand jury transcript).  During the grand jury proceedings, Agent Parker testified Defendant Moss was the man in the back seat who robbed Martin.  Id. at 6, 8.  Parker testified officers recovered Defendant Moss's cell phone from the pocket on the back of the front passenger's seat of the white Ford F-150 in which Martin was robbed.  Id. at 10.  Parker also testified the AR-style pistol recovered at the crime scene was analyzed for DNA, and an expert found strong support that Moss contributed to the DNA profile on the firearm.  Id. at 12.  Parker was not asked about and she did not offer any testimony about the November 5, 2021 interview with Martin.  The grand jury indicted Defendant Moss on charges arising from the October 8, 2021 robbery, including interference with commerce by robbery, carjacking resulting in serious bodily injury, prohibited use of a firearm, possession of a firearm by a prohibited person, and conspiracy.  Doc. 3.

Defendant Moss moves to dismiss the Indictment, arguing Agent Parker's failure to disclose information about the November 5, 2021 interview during her testimony before the grand jury requires dismissal.  Doc. 51-1.

## LEGAL STANDARD

In federal criminal prosecutions, the Constitution guarantees the right to an indictment by an unbiased grand jury.  The Fifth Amendment guarantee no person shall be held to answer for a capital or otherwise infamous crime "unless on presentment or indictment of a Grand Jury" necessarily presupposes "an investigative body 'acting independently of either prosecuting attorney or judge[.]'"  United States v. Dionisio, 410 U.S. 1, 16 (1973) (quoting Stirone v.

United States, 361 U.S. 212, 218 (1960)).  "The grand jury's historic role has been to serve as a 'protective bulwark standing solidly between the ordinary citizen and the overzealous prosecutor.'"  United States v. Pabian, 704 F.2d 1533, 1535 (11th Cir. 1983) (quoting United States v. Dionisio, 410 U.S. 1, 17 (1973)).  "The reality that grand jury proceedings are 'secret, ex parte and largely under the control of the federal prosecutor, magnifies this concern.'"  Id. (quoting United States v. Serubo, 604 F.2d 807, 816 (3d Cir. 1979)).  An indictment, regular on its face, carries with it a strong presumption of validity, and there is a strong presumption of regularity accorded to the deliberations and findings of grand juries.  Ward v. United States, 694 F.2d 654, 658 (11th Cir. 1983); United States v. Molinares, 700 F.2d 647, 651 n.6 (11th Cir. 1983).

"Federal courts possess the power and duty to dismiss federal indictments obtained in violation of the Constitution or laws of the United States."  Pabian, 704 F.2d at 1536.  "[F]alse testimony before the grand jury justifies dismissal of an indictment if the false testimony results from 'prosecutorial misconduct' that causes prejudice to the defendant."  United States v. Verbitskaya, 406 F.3d 1324, 1336 n.13 (11th Cir. 2005) (quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 251 (1988)).  To assess prejudice, the district court must ask whether an error before the grand jury "substantially influenced the grand jury's decision to indict" or whether there is "grave doubt" the decision to indict was free from the substantial influence of an error.  United States v. Vallejo, 297 F.3d 1154, 1165 (11th Cir. 2002) (quoting Bank of Nova Scotia, 297 F.3d at 251).  Courts cannot, however, dismiss an indictment "based on the government's failure to present known exculpatory evidence to the grand jury."  United States v. Kaley, 677 F.3d 1316, 1324 (11th Cir. 2012) (citing United States v. Williams, 504 U.S. 36, 55 (1992)).  Courts cannot dismiss an indictment on the basis of inadequate or incompetent

evidence. Id. (citing Costello v. United States, 350 U.S. 359, 363–64 (1956)). Courts cannot dismiss an indictment "even if the grand jury has considered evidence obtained in violation of a defendant's constitutional rights." Id. (citing United States v. Calandra, 414 U.S. 338, 351–52 (1974); and then citing Lawn v. United States, 355 U.S. 339, 349 (1958)).

**DISCUSSION**

Defendant Moss moves to dismiss the Indictment based on the Government's failure to provide information to the grand jury. Doc. 51 at 1. During the hearing on this Motion, counsel for Defendant Moss argued the grand jury would lack probable cause to indict him if it had heard evidence Martin identified Deandre Johnson as the man who robbed him during the November 5, 2021 interview. Counsel also argued the grand jury would not have indicted Defendant Moss without hearing the DNA evidence, which he contends was obtained under a deficient warrant.[2] Defense counsel argued the grand jury heard no evidence about how or when the DNA was left on the firearm. Counsel maintained Agent Parker provided the grand jury with an unsupported conclusion Defendant Moss was the man in the backseat.

Defendant Moss fails to show dismissal of the Indictment is appropriate or required. Defendant Moss argues Agent Parker provided misleading or unsupported testimony to the grand jury that influenced its decision to indict Defendant. Doc. 51-1 at 3. Dismissal of an indictment is only appropriate if a violation of law "substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986)). Therefore, I must determine (1) if

---

[2] Defendant Moss filed a separate motion to suppress the DNA evidence based on omissions from Agent Parker's search warrant affidavit. Doc. 53. I recommended the Court deny this motion to suppress in a separate Report and Recommendation. Doc. 77.

6

the Government's presentation to the grand jury violated the law, and if so, (2) if the violation substantially influenced the grand jury or whether there is grave doubt the grand jury's probable cause determination was free from the substantial influence of the violation.

Defendant Moss has shown no error or violation of law in Agent Parker's testimony before the grand jury that resulted from prosecutorial misconduct. Agent Parker did not provide any false testimony. Counsel for defense conceded during the hearing there is nothing to suggest Parker misrepresented the facts. Agent Parker reasonably identified Defendant Moss as Martin's assailant based on information she gathered during her investigation, including Defendant Moss's phone, Martin's physical description, and DNA evidence. Defendant Moss suggests Agent Parker's testimony was misleading (but not false) because she failed to offer additional testimony about her November 5, 2021 interview with Martin. Moss points to no law or rule requiring Agent Parker to offer such unprompted testimony. Defendant Moss does not contend Agent Parker's testimony violated the United States Constitution, or any other law, or that her testimony was the product of prosecutorial misconduct. Thus, Defendant Moss has failed to demonstrate any error or violation of law in Agent Parker's testimony.

Even if Defendant Moss had shown some violation or error in Agent Parker's testimony, Defendant Moss has not established the grand jury substantially relied on such error. Aside from the DNA evidence and evidence about the November 5, 2021 interview, the grand jury heard testimony that Defendant Moss's phone was found in the F-150 pickup truck in a pocket facing the back seat where Martin's assailant sat. Defendant Moss concedes, for the purposes of this Motion, this phone belonged him. This unchallenged evidence is a sufficient basis for the grand jury's probable cause determination. Considering this independent factual foundational for identifying Defendant Moss as the man in the back seat, there is no "grave doubt" that the grand

jury was substantially influenced by other evidence presented or omitted in error.  Thus, neither the presentation of the DNA evidence nor the omission of the November 5, 2021 interview prejudiced Defendant Moss.

Defendant Moss provides no other basis to dismiss the Indictment.  Furthermore, it is well established that the Court cannot dismiss the Indictment based on the Government's failure to present adequate or even known exculpatory evidence.  See Kaley, 677 F.3d at 1324–25.  Additionally, Defendant Moss cannot challenge the "evidentiary foundation" for the grand jury's probable cause determination by attacking Agent Parker's testimony or the sufficiency of the DNA evidence.  Id. at 1326.  And the Court cannot dismiss the Indictment based on the purported unconstitutionality of the DNA search.  Id. at 1324.  In sum, Defendant Moss has not overcome the strong presumption that the Indictment and grand jury findings are valid, so his Motion to Dismiss is due to be denied.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Defendant Moss's Motion to Dismiss Indictment.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to

file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 31st day of May, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA