**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

UNITED STATES OF AMERICA,

       v.

ROBERT MOSS,

         Defendant.

CASE NO.: 4:23-cr-91-2

## <u>O R D E R</u>

The Government has filed four Motions in Limine.   Docs. 110, 111, 115, 116.

Defendant Robert Moss ("Moss") has responded to these four Motions.   Docs. 126, 127, 128,

134.   The Motions are now ripe for review.   For the reasons set forth below, the Court rules as

follows.

1.   The Government's Motion Regarding Body Camera Footage, doc. 110, is **GRANTED**.

2.   The Government's Motion Regarding Recorded Jail Calls, doc. 111, is **DENIED**.   The Government has established some but not all of the authentication requirements for the two jail call recordings.   In order to fully authenticate the calls, the Government will need to sufficiently identify the call participants.   Additionally, the Government has shown the call recordings should not be excluded on hearsay grounds, on Confrontation Clause grounds, or based on the <u>Bruton</u> principle. Defendant's Rule 403 challenge remains unresolved.

3.   The Government's Motion Relating to Another Incident Involving Officer Webster, doc. 115, is **GRANTED as unopposed.**

4.   The Government's Motion Regarding Equivocal Identification Evidence, doc. 116, **is GRANTED as unopposed.**

**BACKGROUND**

Moss is charged with: conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; interference with commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2; carjacking resulting in serious bodily injury, in violation of 18 U.S.C. §§ 2119 and 2; conspiracy to use a firearm during and in relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(o); two counts of use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2; and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).   Doc. 3. The Government alleges Moss joined his two co-Defendants, Graylyn Simmons and Brandon Williams, to rob and carjack a victim at gunpoint during an intended drug deal on October 8, 2021.[1]   Doc. 75 at 2.   The victim was shot during that incident.   Id.   Savannah Police Department officers recovered an AR-style pistol used in the shooting from a bush at the crime scene and discovered the attempted robbery and gunshot wound victim at the scene.   Doc. 110 at 1; Doc. 111 at 1.   Defendant Simmons has not been arrested or appeared before the Court, and Defendant Williams entered into a plea agreement with the Government.   Docs. 131, 132. Moss is set to go to trial on these charges on September 23, 2024.

The Government asks the Court to make several pretrial evidentiary determinations by way of four separate Motions in Limine.   First, the Government asks the Court to deem admissible a video clip from October 8, 2021 (the day of the incident), from Savannah Police Department Officer Phil Webster's body camera, which captured the video and audio of Webster's response to the scene of the robbery.   Doc. 110.   Second, the Government asks the

---

[1]     All three Defendants have aliases the Government references in the Indictment: Simmons's aliases are "Crane" and "Shake"; Moss's alias is "Fat Boy"; and Williams' aliases are "Lil B" and "Dough Boy."   Docs. 1, 13.

Court to deem admissible two recordings of telephone calls recorded on the Chatham County Detention Center's jail communication system (i.e., two "jail calls") that were placed on October 9 and 13, 2021.   Doc. 111.   Third, the Government asks the Court to exclude any evidence of Officer Webster's involvement in an unrelated shooting that occurred more than a year after the subject incident.   Doc. 115.   Fourth, the Government asks the Court to limit the scope of questions Moss can pose to investigators at trial.   Doc. 116.   The Government argues Moss should be allowed to ask investigators about the victim's equivocal identification of the third participant in the October 8, 2021 robbery (i.e., the backseat passenger) and any follow up investigation on the equivocal identification, but Moss should not be allowed to ask about why evidence of that equivocal identification was not provided to the Grand Jury or in a particular search warrant application.   Moss has responded to these Motions.   Docs. 126, 127, 128, 134. These matters are fully briefed and ready for review.

## DISCUSSION

### I.    The Body Camera Footage Is Admissible

The Government asks the Court to deem admissible a four and one-half minute portion of Officer Webster's body camera footage taken on the October 8, 2021 the date of the robbery. Doc. 110 at 1–2.   The Government states the video clip shows Officer Webster responding to the location of the report crime, exiting his vehicle, interacting with two people who were standing at the apartment complex and who directed Officer Webster's attention to the bush where the firearm was located, and finding the gunshot wound victim and administering first aid to him.   According to the Government, all statements made in the clip are admissible as exceptions to the hearsay rule or under the residual hearsay exception.   Id. at 3.   The

Government also believes the video footage is more probative than prejudicial because it "is significant evidence proving an element of a charged offense."   Id.

In his Response, Moss argues that the video clip and the statements on the clip are inadmissible because: the probative value is outweighed by prejudice and cumulativeness; this is an improper attempt to place the victim's prior, consistent statements before the jury; the statements constitute hearsay without an applicable exception; the admission would violate the Confrontation Clause; and the victim is available to testify and, therefore, the statements should not be admitted under Rule 807.   Doc. 127 at 2–3.

The video clip the Government seeks to introduce shows Officer Webster arrive at the scene of the incident soon after the victim was shot.   Doc. 110-2 (Gov't Exh. 2).   At the outset, Officer Webster encounters two men.   One man is in a bush, and the other man stands beside the bush.   The second man tells Officer Webster a firearm is in the bush, indicates the direction the perpetrators went, and directs Officer Webster to the gunshot victim.   Id. at 0:10–0:16.   Officer Webster is running and asking bystanders where the "guy who got hit" is.   Id. at 0:20–1:00.   As Officer Webster approaches the victim, a woman and man are providing aid to the victim.   The woman describes the victim's injuries and offers thoughts on first aid.   The woman appears to know the victim, as she calls him by his first name.   Id. at 1:12.   At least one male on the scene is telling the victim to calm down.   The woman relays to Officer Webster where the victim has been shot and tells Officer Webster the tourniquet he is trying to apply will not work because the victim has been shot in the groin and buttocks.   Officer Webster asks the victim whether the victim knew the perpetrators, asks for a description of the perpetrators, and asks if the victim knows how many perpetrators there were.   When another officer brings Officer Webster rubber gloves, he struggles to get the gloves on quickly.   Id. at 1:15–3:00.   Officer Webster asks

4

another officer to go wait for EMS (Emergency Medical Services) and later asks "Brandon" to "air this when you can."   Id. at 3:01–3:40.   Two EMS personnel arrive at the scene soon thereafter, and they and Officer Webster administer further aid to the victim, including cutting off the victim's clothing.   The video clips reveals where the victim was shot in his groin but not his buttocks.   Id. at 3:40–4:30.

A.   **The Video Clip Is More Probative Than Prejudicial**

The Government recognizes the video clip is graphic, as it depicts the victim suffering from a gunshot wound to his groin and buttocks and shows the victim's clothing being removed from his body.   Doc. 110 at 4.   However, the Government states this video clip is the best evidence of the victim's serious bodily injury, and it must prove this injury to obtain a conviction under § 2119.   The Government also states this clip explains how officers learned the firearm used in the shooting was in a bush near the entrance of the apartment complex, shows how the crime scene appeared during the initial law enforcement response, and reveals the victim's descriptions of his assailants moments later, including describing the third assailant as a "fat dude."   Id.

Moss responds the video is of minimal probative value, as the video "arguably" does not reveal where or how the victim was injured, only that he was covered in blood and was in pain. Doc. 127 at 3.   Moss also notes the victim is expected to testify and his testimony is the best evidence of his injuries and his identification and the video is cumulative to that testimony.   Id. at 3, 4–5.   Moss argues the video would serve only to unfairly inflame the jury with graphic details.   Id. at 3–4.   In addition, Moss asserts Officer Webster is expected to testify at trial, and the video would be cumulative to his testimony about how he learned about the firearm and how the crime scene appeared upon his arrival.   Id. at 4.   Further, Moss asserts allowing the video

clip into evidence regarding the victim's identification of his assailants, particularly one description of a "fat dude," would improperly place the victim's prior consistent statements before the jury, and the victim has not made any inconsistent statements about his assailants and there is no indication he will.   Id. at 5–6.

Under § 2119, the Government must prove "intent to cause death or serious bodily harm" during a carjacking and, if serious bodily injury results, a person convicted under this statute faces a term of imprisonment not to exceed 25 years.   18 U.S.C. § 2119(2).   "Serious bodily injury" means bodily injury involving: "a substantial risk of death"; "extreme physical pain"; "protracted and obvious disfigurement"; or "protracted loss or impairment of the function of a bodily member, organ, or mental faculty[.]"   18 U.S.C. § 1365(h)(3) (defining "serious bodily injury" within the meaning of § 2119(2)).

This video depicts the victim having been injured and is, thus, relevant to the Government's prosecution of Moss for the § 2119 charged offense.   This video could be probative of whether Moss inflicted serious bodily injury upon the victim during the course of the carjacking.   Even so, the Court still must determine whether the probative value is substantially outweighed by unfair prejudice and whether the evidence is improperly cumulative.

Under Rule 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."   Fed. R. Evid. 403.   "Unfair prejudice" "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee notes to 1972 proposed rule.   The Court has broad

discretion in controlling evidence presented during the trial of a case.   <u>Tran v. Toyota Motor Corp.</u>, 420 F.3d 1310, 1315 (11th Cir. 2005).

While the video does not depict the victim being shot, it clearly shows the victim suffering from what appears to be a very recent gun shot injury.   In addition, a bystander says in the video that the victim was shot in the groin and in the buttocks, and the victim states where his pain is.   Further, the video shows at least where one of the victim's wounds is—namely, in the groin area.   The Government states that it cut the video at the point it did to limit the graphic nature of the video it wishes to present.   There is some potential unfair prejudice that could arise from the video, in that it depicts in some graphic detail the victim's injuries.   However, the video is short and contains limited focus on the injuries.   Most of the video is devoted to Officer Webster's actions and statements and the comments from bystanders.   Ultimately, Moss has not shown the probative value of the video is substantially outweighed by the relatively small risk of unfair prejudice.

Rule 403 allows courts to exclude cumulative evidence, but such rulings are "best made at trial, 'so that the Court can ascertain whether the evidence is cumulative of other admissible evidence in the proper context.'"   <u>Griffin v. Coffee County</u>, 623 F. Supp.3d 1365, 1380 (S.D. Ga. 2022) (quoting <u>Safranek v. Wal-Mart Stores, Inc.</u>, No. 07-61533-CIV, 2010 WL 11505264, at *2 (S.D. Fla. July 15, 2010)).

Here, Defendant has not demonstrated that the video clip will necessarily be improperly cumulative.   The victim and Officer Webster are expected to testify during the trial of this case, but the issue of whether the video clip will be a "needless presentation of cumulative evidence" cannot be determined at this time.   Moss may raise objection during the trial but, based on the

record before the Court at the present, the Court **GRANTS** this portion of the Government's Motion.[2]

### B.    The Witnesses' Statements Are Excited Utterances

The Government argues that the statements made by two individuals in the video should not be excluded on hearsay grounds because all of their statements are excited utterances. Specifically, the Government explains that during the first 33 seconds of this video clip, Officer Webster interacted with two people who directed him to the firearm and the victim.   Doc. 110 at 6.   The Government asserts these two people witnessed a shooting in broad daylight, saw the assailants flee the scene, saw a man injured as a result of the shooting, and were still under the stress of these startling events when they made statements.   Id.   The Government maintains statements by these individuals were excited utterances and fall under an exception to the hearsay rule under Rule 803(2).

In his Response, Moss asserts the first two individuals' statements are not excited utterances because they were not under the stress of a startling event.   Doc. 127 at 6.   Moss contends the Government must show an objectively startling event and, under the totality of the circumstances, the declarants were themselves under stress.   According to Moss, the video shows these two people were not distressed or otherwise excited; instead, the two individuals "calmly reported the events[] and then went about their day."   Id. at 7.

Generally, a party cannot present hearsay testimony during a trial.   However, there are exceptions to the general rule against hearsay, regardless of the declarant's availability as a witness.   One of those exceptions is for excited utterances.   Fed. R. Evid. 803(2).   This

---

[2]    Even if these witnesses testify, it is unlikely that the video will be unnecessarily cumulative.   The video is brief, and it will provide visual and audio information that likely cannot be communicated through witness testimony.   Nonetheless, Defendant may reassert this objection if there are adequate grounds.

exception allows for admission of "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."   <u>Id.</u>

Moss does not dispute that the events of October 8, 2021, were startling.   Instead, he argues the two men were not themselves under stress or otherwise excited.   The video does not support Moss's characterization.   The two men Officer Webster encountered are not calm or unexcited.   This is especially true for the man who informed Officer Webster where the firearm was, in what direction the perpetrators had gone, and where the victim was.   Doc. 110-2.   This individual was hurried and urgent in his movements and remarks.   The individuals' agitation is understandable.   It does not appear much time had passed between when Officer Webster received notification of the incident and when he encountered these two men.   Thus, these two men would have still been "under the stress of excitement" the incident caused.   For these reasons, the Court **GRANTS** this portion of the Government's Motion.   The statements the two men made to Officer Webster during the first 33 seconds of this video are admissible as excited utterances.

### C.    The Victim's Statements Are Also Excited Utterances

The Government also argues the statements made by the victim in the video should not be excluded on hearsay grounds because the victim's statements are excited utterances. Specifically, the Government argues the statements the victim made in response to Officer Webster's questions—describing the assailants and their vehicle—are excited utterances. Doc. 110 at 7.

In his Response, Moss argues the Government fails to show the victim was under the stress of the events when answering questions and, as a result, the victim's statements on the

video clip are not admissible under the excited utterance exception to the hearsay rule. Doc. 127 at 8.

As with Moss's argument regarding the statements of the two men Officer Webster first encountered, Moss's characterization of the victim's statements and demeanor is not supported by the video.   The victim was in obvious, substantial pain.   The video plainly shows the victim was still under the extraordinary stress of having been shot very recently.   The Court **GRANTS** this portion of the Government's Motion and finds the victim's statements in the video clip to be admissible as excited utterances.

> **D.    The Statements Were Made During an Ongoing Emergency and Are Non-Testimonial**

The Government also argues the various statements made by individuals in the video were made to meet an ongoing emergency.   According to the Government, the victim was actively bleeding due to a gunshot wound, Officer Webster was trying to find the victim, and Officer Webster was trying to make sure the assailants did not still pose a danger to the people who were gathered at the apartment complex.   Doc. 110 at 8.   The Government also argues these statements are not testimonial in nature and are admissible over any Confrontation Clause objection Moss may lodge.

In his Response, Moss states the two individuals Officer Webster first encountered were waiting for officers' arrival so they could provide statements, which "demonstrates" there was no ongoing emergency.   Doc. 127 at 10.   Thus, Moss contends these statements are testimonial. Moss also states Officer Webster's actions confirm these statements are testimonial because the video shows Officer Webster did not immediately try to locate the assailants or ask other officers to do so.   Id.   Moss notes the victim was suffering from a medical emergency, but the

statements he made during the emergency were to provide descriptions of his assailants, not to resolve the emergency.   Id. at 10–11 n.4.

The United States Supreme Court has distinguished between "nontestimonial" and "testimonial" statements when considering whether evidence violates the Sixth Amendment Confrontation Clause.   Davis v. Washington, 547 U.S. 813 (2006).   The Court held:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.   They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

Buford v. Bolling, No. 218CV01514, 2019 WL 2343863, at *10 (N.D. Ala. Apr. 10, 2019), report and recommendation adopted, 2019 WL 2326001 (N.D. Ala. May 31, 2019) (quoting Davis v. Washington, 547 U.S. 813, 822 (2016)).

The statements the two men and the victim made, as depicted in the video clip, were all made to assist officers on the scene in response to an emergency call.   These statements were made while the declarants were on the scene related to that emergency call, and the statements were made soon after the events giving rise to the emergency call, unlike statements made in an interrogation setting hours after an emergency call has been made.   In addition, officers and EMS personnel were seeking information concerning the victim and his condition when Officer Webster asked the declarants questions.   Furthermore, Officer Webster asked the victim about the assailants in the immediate aftermath of the shooting and in consideration of the fact that the assailants purportedly fled the scene.   Although Officer Webster could have immediately tried to apprehend the assailants, his urgent focus was plainly on treating the victim and assessing the scene of the incident.   The fact that Officer Webster did not immediately try to apprehend the assailants does not diminish the fact that his primary purpose in asking questions was to meet an

ongoing emergency.   Therefore, the Court **GRANTS** this portion of the Government's Motion
and determines these statements are not testimonial in nature and do not implicate the
Confrontation Clause of the Sixth Amendment (mandating an accused have the right to confront
the witnesses against him).[3]

## II.   The Government Has Not Established the Authenticity or Admissibility of Jail Call Recordings at This Time

The Government asks the Court to deem admissible two recorded jail phone calls
involving Brandon Williams, Moss's Co-Defendant in this case.   As explained below, the
Government has demonstrated that the recordings are what they purport to be—i.e., recordings of
jail calls from an inmate at Chatham County Detention Center ("CCDC")—and the Government
has demonstrated that the recordings are not inadmissible due to hearsay objections or a Bruton
challenge.   However, the Government has not, at this time, shown that the recordings are calls
involved Brandon Williams, and, consequently, has not shown the calls are admissible.
Additionally, the Government has not adequately responded to Defendant's Rule 403 challenge.
Ultimately, the Government may be able to establish authenticity and admissibility at trial, but
the Government has not, at this time, established that the jail call recordings are admissible.

The first call occurred on October 9, 2021.   The Government contends that on October 9,
2021, Darryl Milson, an inmate at CCDC, used the automated jail communication system to
contact Moss's Co-Defendant, Brandon Williams (the day after the incident giving rise to this
prosecution).   Doc. 111 at 1–2.   According to the Government, in that call, Milson and
Williams discussed the robbery, and William stated "they" left a car that was in his (Williams's)

---

[3]   The Government also argues that statements in the video are otherwise admissible under Federal
Rule of Evidence 807, the residual exception to the hearsay rule.   Doc. 110 at 9.   In his Response, Moss
argues the Government fails to show the statements satisfy the requirements for residual exception to
apply.   Doc. 127 at 13.   Because I have determined the video and the statements contained on the video
are admissible on other grounds, I do not need to address application of the residual exception.

name at the scene.   Williams stated that "Shake" had a gun during the incident, someone was "swept" at the scene, and police had recovered the firearm.   Id. at 2.

The second call occurred four days later, on October 13, 2021.[4]   According to the Government, Malik Moultrie, another inmate at CCDC, called Williams.   According to the Government, in the second call, Williams described a car chase from the day before, and Williams stated he "lost 'what he had hit for the day before.'"[5]   Id. at 2 (quoting Doc. 111-5). The Government asserts Williams and the other call participants (i.e., Milson and Moultrie) were advised that the calls were being recorded and subject to monitoring.   Id.

The Government asks the Court to deem these recordings (submitted as Exhibits 3 and 5) to be admissible, advancing four separate arguments.   First, the Government states these recordings are certified business records of the Chatham County Sheriff's Office.   Second, the Government argues the recordings are not inadmissible hearsay because Williams's statements in the calls are statements against penal interest and are admissible under Federal Rule of Evidence 804(b)(3)(A).   Third, the Government argues the recordings are not inadmissible based on any Confrontation Clause challenge because Williams's statements are not testimonial.   Finally, the Government argues the recordings are not inadmissible based on any Bruton v. United States, 391 U.S. 123 (1968) challenge, because Williams and Moss are not going to be tried together.

---

[4]        The Government provided October 13, 2024 as the date of the second call.   Doc. 111 at 2.   The Court presumes this was a typographical error, given the context of the call and the events giving rise to this prosecution.

[5]        The Government describes an attempted traffic stop by the Port Wentworth Police Department on October 12, 2021, on a red Jeep Cherokee registered to Brandon Williams.   Doc. 111 at 2.   The driver fled the scene of the attempted stop, and the driver was able to elude capture.   Officers searched the vehicle and found a Louis Vuitton backpack containing "a sizable quantity of controlled substances."   Id. Officers also discovered identification and a cell phone linked to Williams.   The Government states investigators learned the bag and controlled substances recovered from the Jeep were the same items taken from the victim during the October 8, 2021 robbery.   Id. at 3.

Id. at 3–9.   Notably, the Government's first argument merely seeks a ruling on authenticity, while the Government's remaining arguments anticipate admissibility challenges Defendant might make and attempt to preemptively overcome those challenges.

In response, Defendant concedes the Government has established the recordings are of recordings of CCDC jail calls and, therefore, satisfy the requirements for authentication of business records.   However, Defendant argues the Government has not sufficiently proven the identity of the call participants, which is required for establishing the authenticity of these recordings.   Doc. 128.   In other words, Defendant argues the Government has shown some, but not all, of the requirements for authenticating the recordings.   Defendant does not respond to the Government's other arguments, which anticipated challenges based on hearsay, the Confrontation Clause, and Bruton.[6]   Instead, Defendant raises an additional admissibility challenge under Federal Rule of Evidence 403.   Defendant argues the calls are "hard to hear, contain audio distortions, and the speakers often use slang words that are not readily decipherable."   Id. at 4.   Consequently, Defendant argues the probative value of the recordings is low and the recordings present a significant risk confusing or misleading the jury as well as unfair prejudice.

The Court addresses each of the parties' arguments in turn.

---

[6]     Indeed, at the pretrial conference, counsel for Moss explained that his primary challenge to the recordings is the Government has not proven the identity of the call participants and his "backup" challenge concerned the poor quality of the recordings.   Counsel for Moss did not embrace any of the admissibility challenges the Government anticipated in its Motion in Limine.

A.      **The Government Has Established Some But Not All of the Requirements for Authenticating the Jail Call Recordings**

The Government's first argument concerns the authenticity of the jail call recordings. The Government maintains the recordings are self-authenticating business records under Federal Rule of Evidence 902(11).   In support, the Government attached a certificate of authenticity an official at the Chatham County Sheriff's Office signed regarding Exhibits 3 and 5 (the two recordings).   The Government served notice of its intention to admit these Exhibits as certified business records under Rule 902.   Id. at 3.

Moss agrees the calls are jail calls recorded and stored as regularly conducted activity of the Chatham County Sheriff's Office.   However, Moss asserts the Government has not proven the identity of the call participants or proven which of the participants is speaking during the recordings.   Doc. 128 at 2–3.   And, because the Government has stated Brandon Williams will be unavailable to testify at trial, he cannot provide testimony about the identities of the people on these calls.   Moss concludes these recordings should not be admitted as a result.   Id. at 3.

The Court recently held a pretrial conference in this case.   Counsel offered additional comment on the issues the Government raises in its Motion in Limine.   Counsel for the Government did not dispute that the Government would need to prove the identity of the call participants before the recordings could be admitted into evidence.   Instead, counsel for the Government asserted that it would present evidence about the identities of the call participants at trial through a law enforcement witness or witnesses who can identify the voices on the calls. The Government reiterated it would present this authentication evidence at trial.

Under Rule 902(11) of the Federal Rules of Evidence, the recorded jail calls are part of the Chatham County Sheriff's Office's regularly conducted business and are self-authenticating. See also Fed. R. Evid. 803(6)(A)–(C) (discussing records of a regularly conducted activity as

being exceptions to the rule against hearsay).   Moss agrees these recordings are, in fact, recordings of jail calls made by an inmate at CCDC.   Therefore, the Government has established this aspect of authentication.   The Government need not present any witness to establish that the recordings are in fact recordings of jail calls made by an inmate at CCDC, and Defendant may not challenge that aspect of the authenticity of the recordings.

However, the Government must do more to fully authenticate the recordings.   The Government maintains the recordings are of calls made by Milson and Williams and Moultrie and Williams, respectively.   In order to authenticate a recording, the government, in a criminal case, must establish, among other things, "the identification of the relevant speakers."[7]   United States v. Sarro, 742 F.2d 1286, 1292 (11th Cir. 1984); United States v. Robinson, No. CR419-014, 2019 WL 2881596, at *1 (S.D. Ga. July 3, 2019).   The Government has not, at this time, offered any evidence to establish the identities of the call participants.   Thus, the Government has not fully established the authenticity of the two recordings.   The Government may, nonetheless, seek to establish the remaining authentication requirements at trial.

**B.      These Are Statements Against Penal Interest Under Rule 804(b)(3)(A)**

In anticipation of a hearsay challenge by Defendant, the Government argues Williams's statements in these recordings qualify as an exception to the hearsay rule under Federal Rule of Evidence 804(b)(3)(A) as statements against a penal interest.[8]   Doc. 111 at 4.   The Government contends Williams's statements are against his penal interest because they detail his criminal activity due to his involvement in the robbery and shooting in this case.   Id.   Further, the

---

[7]      Although Sarro lists other requirements for establishing authenticity of audio recordings, Moss's challenge only concerns the Government's failure to establish the identities of the relevant speakers.

[8]      The Court presumes, for purposes of this Order only, the persons on these calls are who the Government represents they are.   However, the Government must sufficiently establish the identity of the call participants at trial.   See Doc. 111 at 5–6.

Government maintains sufficient corroboration exists to support Williams's statements as being true.  Id. at 6–7.   Defendant did not respond to this argument.   Doc. 128.

A hearsay statement will not be excluded by the rule against hearsay if the "declarant is unavailable as a witness" and the statement is one "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made" it would "expose the declarant to . . . criminal liability[]" and when offered in this context "is supported by corroborating circumstances that clearly indicate its trustworthiness[.]"   Fed. R. Evid. 804(b)(3).

The Government has shown Williams will be unavailable at Moss's trial.   Williams has entered a guilty plea but will not be sentenced prior to the trial in this case and, as a result, he will be unavailable to testify based on his Fifth Amendment privilege against self-incrimination. The Government also meets the remaining requirements of Rule 804(b)(3)(A).   In the calls, Williams describes his participation in criminal activity and other events directly related to this case.   These statements sufficiently show Williams's involvement in criminal activity, and the events and activity described in the calls are corroborated by other evidence the Government submitted in support of this Motion.   Docs. 111-1, 111-2, 111-4, 111-6, 111-8.   Thus, the Government has shown that Williams's statements during the call should not be excluded as inadmissible hearsay because the statements qualify as statements against penal interest under Rule 804(b)(3)(A).

### C.    Williams's Statements Are Non-Testimonial

In anticipation of a Confrontation Clause challenge by Defendant, the Government argues Williams's statements on the recordings do not implicate the Confrontation Clause because the Confrontation Clause only prohibits the introduction of testimonial hearsay statements, and Williams's statements are not testimonial in nature.   Doc. 111 at 8.   The Government argues

Williams's statements on the recordings are made to friends who were not asked to uncover criminal behavior.   To the contrary, Williams made his statements to friends who were under suspicion of engaging in criminal behavior and were, at the time, being held in detention, which underscores that the statements were not testimonial.   The Government acknowledges that Williams was warned his statements would be recorded and subject to law enforcement monitoring, but the Government argues an objective witness would not expect these statements to be used at trial based on a police interrogation.   Thus, the Government argues Williams's statements should be admitted over any objection based on the Confrontation Clause.   Id.

Defendant did not respond to this argument and there is no indication Defendant intends to invoke a Confrontation Clause challenge to the admissibility of Williams's statements on the recordings.   Additionally, the record demonstrates Williams's statements during the calls were not testimonial.   Williams appears to be speaking to friends during the calls.   Nothing suggests that Williams's statements during these two calls were made in response to any police interrogation.   Ultimately, Defendant presents no evidence that Williams's statements were testimonial.   Therefore, I conclude Williams's statements during the two recorded calls are not testimonial in nature and do not present any Sixth Amendment confrontation concerns. See United States v. Hano, 922 F.3d 1272, 1287 (11th Cir. 2019) ("The Supreme Court has since clarified that the Confrontation Clause prohibits only the introduction of testimonial hearsay statements.") (citing Whorton v. Bockting, 549 U.S. 406, 419–20 (2007)).

### D.   **Bruton Is Not Applicable**

In anticipation of a challenge by Defendant under Bruton v. United States, the Government argues the Bruton principle—i.e., the right to not have a non-testifying co-defendant's statements admitted against a defendant at a joint trial—is inapplicable here because

Williams will not be tried with Moss.   Doc. 111 at 8, 9.   Additionally, the Government states Williams's statements are not testimonial and the statements do not directly implicate Moss, which renders <u>Bruton</u> in applicable.   <u>Id.</u> at 9.   Defendant did not respond to these arguments.

In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the Supreme Court considered "whether the conviction of a defendant at a joint trial should be set aside although the jury was instructed that a codefendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence."   391 U.S. at 123–24.   The Supreme Court held there was a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [defendant's] guilt," and the admission of these statement in a joint trial involving a codefendant "violated [defendant's] right of cross-examination" under the Sixth Amendment.   <u>Id.</u> at 126.

As the Government notes, Williams will not testify at Moss's trial and is not going to be tried with Moss.   In addition, Williams makes no statement in the jail recordings that directly implicates Moss.   Accordingly, <u>Bruton</u> is not applicable to Williams's statements in the recordings.   Therefore, the recordings are not inadmissible based on <u>Bruton</u>.

### E.   Defendant's Rule 403 Challenge

In his Response to the Government's Motion in Limine, Moss argues the recorded jail calls should be excluded under Federal Rule of Evidence 403.   Doc. 128 at 4.   Moss argues the recordings are of limited probative value because these conversations are hard to hear, the recordings contain audio distortions, and the speakers use slang words that are not readily decipherable.   Moss additionally contends the inaudible portions of the recordings create the danger of confusion, misleading the jury, and unfair prejudice.   Moss does not challenge the relevance of these recorded calls under Federal Rule of Evidence 401, only that these calls should be excluded under Rule 403.

As noted, Moss raised this challenge in his Response to the Government's Motion in Limine.   The Government did not file a reply brief.   At the pretrial conference, Moss's counsel reiterated the argument that the recordings are of such poor quality they should be excluded. The Government's counsel was given an opportunity to respond but did not address the issue of the quality of the calls or Defendant's Rule 403 challenge.[9]

Moss is correct that audio recordings must be sufficiently audible to be admissible. Revis v. T&A Farms, No. 5:14-CV-88, 2017 WL 1217199, at *2 (S.D. Ga. Mar. 31, 2017) (citing authority).   The audible requirement means "some sound or part of some sound can be heard sufficiently to permit the listener to ascertain with reasonable reliability the sense in which the speaker used any word or words that can be heard."   Id. (quoting United States v. Aisenberg, 120 F. Supp. 2d 1345, 1349 (M.D. Fla. 2000)).   A "district court is required to exclude a recording only if the inaudible or unintelligible portions 'are so substantial as to render the whole recording untrustworthy.'"   Id. (quoting United States v. Sutherland, 656 F.2d 1181, 1200 (5th Cir. 1981); and citing Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1533 (11th Cir. 1990)).   "This determination of reliability is left to the sound discretion of the trial judge." United States v. Pope, 132 F.3d 684, 688 (11th Cir. 1998).

Defendant's argument under Rule 403 is not sufficiently developed at this time. Although Defendant has presented his argument, and the Court has listened to the audio recordings, the Government has not responded to Defendant's contention.   The Government has not sufficiently explained the probative value of the calls or responded to the claims that jurors

---

[9]     Although the Court would have preferred for the Government to have fully addressed this argument in a brief or at the pretrial conference, the Government's failure to do so is somewhat understandable.   Moss's counsel characterized this argument simply as a "backup" argument and and devoted little time to addressing this issue at the conference.   The best course, at this point, is to defer ruling on the matter.

will be confused or misled by the unintelligible portions of the recordings.   Therefore, the undersigned cannot say, at this time, that Moss has shown the probative value of these recorded calls is "substantially outweighed by a danger of . . .: unfair prejudice, confusing the issues, [or] misleading the jury . . . ."  Fed. R. Evid. 403.   As a result, the Court defers ruling on Defendant's Rule 403 argument.   Defendant is free to re-urge this argument to the presiding District Judge at trial.   The Government should be prepared to fully respond to Defendant's Rule 403 argument at that time.

In sum, the Government has established some, but not all, of the authentication requirements for the two jail call recordings.   In order to fully authenticate the calls, the Government will need to sufficiently identify the call participants.   Additionally, the Government has shown that the call recordings should not be excluded on hearsay grounds, on Confrontation Clause grounds, or based on the Bruton principle.   Defendant's Rule 403 challenge remains unresolved.   Consequently, the Government's request for the Court to deem the jail call recordings admissible is **DENIED** at this time.

### III.   The December 2022 Shooting Incident Involving Officer Webster Is Irrelevant

The Government asks the Court to exclude evidence of an unrelated shooting involving Officer Webster.   Doc. 115 at 2.   Officer Webster, the responding officer in this case, was involved in a shooting incident more than a year after the events giving rise to the instant prosecution.   The incident occurred on December 5, 2022, when officers were at a homeless encampment in Savannah, Georgia.   On that date, Officer Webster shot and killed a man after the man attacked Officer Webster and other officers.   The Savannah Police Department's Internal Affairs Unit and the Georgia Bureau of Investigation investigated the matter, and neither office brought charges against Office Webster, finding his use of force was justified.   Id.   The

21

Government learned of this incident when counsel was preparing Officer Webster for trial and notified Moss's counsel.   Id.   The Government asserts this shooting incident is irrelevant to the issues for trial and, if the Court finds this information relevant, any probative value of this evidence is substantially outweighed by its prejudice.   Id. at 2–4.

Defendant does not object to the Government Motion, to the extent the Government seeks to preclude Defendant from asking Officer Webster about the December 5, 2022 shooting incident.   Doc. 134.   Thus, I **GRANT as unopposed** this Motion.

## IV.   Admission of Evidence Relating to the Equivocal Identification Will Be Limited

The Government asks the Court to limit the scope of Defendant's questioning at trial on the topic of the victim's equivocal identification of the individual in the backseat of the vehicle during the October 8, 2021 robbery.   In an interview after the incident, the victim indicated to investigators that a person depicted in a music video might have been the person in the backseat of the vehicle, but the statement was equivocal.   Doc. 116 at 1.   The Government notes this equivocal identification was not included in Special Agent Parker's affidavit in support of a search warrant for Moss's DNA, and Special Agent Parker did not mention the equivocal identification in her testimony to the grand jury.   Id. at 2.   The Government has no objection to Moss asking the victim and the investigators about this equivocal identification or asking investigators what steps were taken after the equivocal identification to determine whether Mr. Johnson was the person in the backseat.   However, the Government argues Moss should be not allowed to ask investigators about any omission of this information from the search warrant affidavit or the grand jury testimony.   The Government argues such information is irrelevant and the Court has already adjudicated challenges based on those omissions.   Id. at 2–3.

For the most part, Moss does not oppose the Government's Motion.   Doc. 126 at 3. Moss agrees it would be improper to ask questions about the omissions from the search warrant affidavit and grand jury testimony, but with one caveat.   Moss contends he should be allowed to ask investigators questions about the search warrant affidavit and grand jury testimony, if the investigators give testimony at trial that is inconsistent with the affidavit and grand jury testimony.

Thus, I **GRANT as unopposed** the Government's Motion.   Moss is free to ask the victim and investigators about the equivocal identification and ask the investigators what steps they took to determine whether Mr. Johnson was the person in the backseat.   If the investigators offer testimony that is inconsistent with prior statements the investigators made, Moss, of course, may question investigators about the prior inconsistent statements.   The Government may assert objections at that time.

## CONCLUSION

For the reasons set forth above, the Court rules as follows.

1.     The Government's Motion Regarding Body Camera Footage, doc. 110, is **GRANTED**.

2.     The Government's Motion Regarding Recorded Jail Calls, doc. 111, is **DENIED**.   The Government has established some but not all of the authentication requirements for the two jail call recordings.   In order to fully authenticate the calls, the Government will need to sufficiently identify the call participants.   Additionally, the Government has shown the call recordings should not be excluded on hearsay grounds, on Confrontation Clause grounds, or based on the <u>Bruton</u> principle. Defendant's Rule 403 challenge remains unresolved.

3.     The Government's Motion Relating to Another Incident Involving Officer Webster, doc. 115, is **GRANTED as unopposed.**

4.    The Government's Motion Regarding Equivocal Identification Evidence, doc. 116, i**s GRANTED as unopposed.**

**SO ORDERED**, this 20th day of September, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA